**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Carolyn Winans, individually and on behalf of all others similarly situated, | Case No.: 2:23-cv-01198 |
| Plaintiff, | |
| v. | **AMENDED CLASS ACTION COMPLAINT** |
| Oruna Foods North America Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Carolyn Winans ("Plaintiff") brings this Class Action Complaint against Defendant Ornua Foods North America Inc. ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.      Plaintiff brings this important consumer class action lawsuit on behalf of similarly situated consumers ("Class Members") who purchased for personal, family, or household use, Defendant's Kerrygold Salted and Unsalted Butter Sticks (the "Products"), which are prominently labeled as containing "PURE IRISH BUTTER" when, in fact, the Products contain per- and polyfluoralkyl substances ("PFAS"), a category of synthetic chemicals that are, by definition, artificial.

2.      PFAS are a group of synthetic, man-made, chemicals known to be harmful to both humans and the environment.  Because PFAS persist and accumulate over time, they are harmful even at very low levels.  Indeed, "PFAS have been shown to have a number of toxicological effects

1

in laboratory studies and have been associated with thyroid disorders, immunotoxicity effects, and various cancers in epidemiology studies."[1]

3.      In fact, scientists are studying—and are extremely concerned about—how PFAS affect human health.  Consequently, the CDC outlined "a host of health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease."[2]

4.      Defendant formulates, manufactures, markets, and sells the Products, which it uniformly represents as containing "PURE IRISH BUTTER."



---

[1] Nicholas J. Heckert, et al. "Characterization of Per- and Polyfluorinated Alkyl Substances Present in Commercial Anti-fog Products and Their In Vitro Adipogenic Activity," Environ. Sci. Technol. 2022, 56, 1162-1173, 1162.

[2] Harvard T.H. Chan Sch. Of Pub. Health, Health Risks of widely used chemicals may be underestimated (June 27, 2018), https://www.hsph.harvard.edu/news/hsph-in-the-news/pfas-healthrisks-underestimated/ (last visited Aug. 15, 2022).

5.      Defendant maintained exclusive control over the contents of the packaging and the Product and could have used different packaging that did not contain PFAS.  The inclusion of PFAS in the Products is not information that Plaintiff could have obtained prior to purchase. Indeed, this information was possessed by Defendant alone.

6.      Defendant knows the importance of marketing and labeling, including the value of the label representations it carefully chose for placement on the Products.  To that end, Defendant deceptively marketed the Product as "pure" while possessing exclusive knowledge that the Product's packaging actually contained PFAS, which migrates directly into the butter.  Further evidencing this fact, Defendant has issued a recall for the Products.[3]

7.      Scientific research studies show that PFAS migrates into foods, including butter, when PFAS are present in the food packaging:

   *a.*      A study by T H Begley, *et al.* published in March 2008 studied the amount of migration that occurs into foods and food-simulating liquids and the characteristics of the migration.  Migration characteristics were examined in different foods, including butter. The results indicate that PFAS can migrate from the food packaging into the food itself.[4]

   *b.*      A study by Arabela Ramírez Carnero, *et al.* published in the Multidisciplinary Digital Publishing Institute in June 2021, *Presence of Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS) in Food Contact Materials (FCM) and Its Migration to Food*,[5] concluded that PFAS can migrate from food packaging into the food itself.[6]

   *c.*      A published study in March 2023, *Directly Fluorinated Containers as a Source of Perfluoroalkyl Carboxylic Acids*, also showed the PFAS can migrate from the fluorinated containers into food.[7]

---

[3] https://961thebreeze.com/kerrygold-butter-recall-new-york/
[4] Begley TH, Hsu W, Noonan G, Diachenko G. Migration of fluorochemical paper additives from food-contact paper into foods and food simulants. Food Addit Contam Part A Chem Anal Control Expo Risk Assess. 2008 Mar;25(3):384-90. doi: 10.1080/02652030701513784. PMID: 18311629.
[5] Ramírez Carnero A, Lestido-Cardama A, Vazquez Loureiro P, Barbosa-Pereira L, Rodríguez Bernaldo de Quirós A, Sendón R. Presence of Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS) in Food Contact Materials (FCM) and Its Migration to Food. *Foods*. 2021; 10(7):1443. https://doi.org/10.3390/foods10071443.
[6] *Id.*
[7] Heather D. Whitehead and Graham F. Peaslee *Environmental Science & Technology Letters* 2023 *10* (4), 350-355

   *d.*  Another study published study in March 2023, *Per- and Polyfluoroalkyl Substances in Canadian Fast Food Packaging*, stored eight PFAS-contaminated food product wrappers from popular fast food restaurants in a dark, enclosed area for two years and found as much as an 85% drop in PFAS levels, which proved PFAS breaks off from packaging and thus gets into the food it contacts.[8]

   *e.*  A study by Y Xu, *et al.* published in May 2013 studied the migration from food contact papers into food simulant and found that after 10 days, PFAS migrated into the food simulant at rates as high as 100%.[9]

  8.  Defendant intentionally uses the words "PURE IRISH BUTTER," among others, to drive sales and increase profits, including by targeting health-conscious consumers who reasonably believe that the Products are free from artificial ingredients, including chemical ingredients which are known to be harmful to human health.

  9.  However, despite Defendant's consistent and pervasive marketing representations to consumers that their Products are healthy, and made with "PURE IRISH BUTTER," the Products actually contain PFAS—a category of man-made chemicals with a toxic, persistent, and bioaccumulative nature which are associated with numerous health concerns.

  10.  The presence of PFAS is entirely inconsistent with Defendant's uniform representations that the Products only contain "PURE IRISH BUTTER."

  11.  As a result of Defendant's misconduct, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

---

DOI: 10.1021/acs.estlett.3c00083

[8] *Per- and Polyfluoroalkyl Substances in Canadian Fast Food Packaging* Heather Schwartz-Narbonne, Chunjie Xia, Anna Shalin, Heather D. Whitehead, Diwen Yang, Graham F. Peaslee, Zhanyun Wang, Yan Wu, Hui Peng, Arlene Blum, Marta Venier, and Miriam L. Diamond *Environmental Science & Technology Letters* 2023 *10* (4), 343-349 DOI: 10.1021/acs.estlett.2c00926 6

[9] Xu Y, Noonan GO, Begley TH. Migration of perfluoroalkyl acids from food packaging to food simulants. Food Addit Contam Part A Chem Anal Control Expo Risk Assess. 2013;30(5):899-908. doi: 10.1080/19440049.2013.789556. Epub 2013 May 24. PMID: 23701306.

12.     Accordingly, Plaintiff brings her claims against Defendant individually and on behalf of a Class of all other similarly situated for (1) violation of New York Gen. Bus. Law § 349, *et seq.*; (2) violation of New York Gen. Bus. Law § 350, *et seq.*; (3) breach of express warranty; (4) negligent misrepresentation; and (5) unjust enrichment.

## PARTIES

### A. Plaintiff

13.     Plaintiff Carolyn Winans is a resident of Brooklyn, New York, and was, at all times relevant hereto, a citizen of New York.  During the applicable statute of limitations period, Plaintiff purchased Defendant's Products that were subject to the recall.

### B. Defendant

14.     Defendant Oruna Foods North America Inc. is a corporation with its corporate headquarters in Evanston, Illinois.

## JURISDCTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more proposed Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because a Plaintiff and Defendant are citizens of different states.

16.     This Court has personal jurisdiction over the Defendant because it transacts business in this state and district, has substantial aggregate contacts with this state and district, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in this state and district, and because it purposefully availed

itself of the laws of the state of New York, and further because Plaintiff purchased the Products in this state and district.

17.     In accordance with 28 U.S.C. § 1391, venue is proper in this district because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this district, including Plaintiff's purchase of the Products, because Defendant transacts substantial business in this district, and because Defendant has intentionally availed themselves of the laws and markets within this district.

## FACTUAL ALLEGATIONS

### *Defendant's Business*

18.     Ornua Foods North America Inc sells a variety of "PURE IRISH BUTTER."

19.     In an already crowded market, there is enormous incentive for companies such as Defendant to cultivate a wellness-minded corporate image and market their products as safe.

20.     In order to capitalize on this consumer demand, Ornua Foods North America Inc.'s products are aggressively marketed to health-focused consumers, owing in large part to the purported "PURE IRISH BUTTER."

21.     Ornua Foods North America Inc. sells its products, including the Products that are the subject of this litigation, at mass market retailers and grocery stores throughout the United States.

### *Defendant's False and Deceptive Nutrition Claims*

22.     The Products are ready-to-use butter products which are uniformly represented as butter products that contain, "PURE IRISH BUTTER."

23.     The Products' packaging is depicted below.

6



24.     The Products do not disclose the presence of PFAS—or any other synthetic chemical—in their ingredients. Rather, Defendant claims the ingredients are "PURE IRISH BUTTER."

25.     It is undeniable that the Products are uniformly represented across all marketing channels-- including the Product's packaging, where it cannot be missed by consumers – as containing "PURE IRISH BUTTER."

***PFAS Chemicals and Associated Risks***

26.     PFAS are a category of highly persistent and potentially harmful <u>man-made chemicals</u>.[10]

---

[10] *PFAS Explained*, EPA, https://www.epa.gov/pfas/pfas-explained (last visited October 24, 2022).

27.     PFAS are <u>not naturally occurring</u>.[11]  They were first developed by scientists in the 1940s.[12]  Thus, they are indisputably "artificial" and not "natural."

28.     The man-made PFAS chemicals, which are in the Products, are sometimes called "forever chemicals" because they bioaccumulate, or build up in the body over time.

29.     Diet is considered a major route of PFAS exposure for humans, and reasonable consumers purchasing Products represented as natural would not expect them to contain harmful man-made chemicals, such as PFAS.[13]

30.     PFAS chemicals have been associated with a variety of negative health effects for humans and the environment.

31.     The EPA has identified that "[c]urrent peer-reviewed scientific studies have shown that exposure to certain levels of PFAS may lead to:"[14]

      a.  Reproductive effects such as decreased fertility or increased high blood pressure in pregnant women.

      b.  Developmental effects or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes.

      c.  Increased risk of some cancers, including prostate, kidney, and testicular cancers.

      d.  Reduced ability of the body's immune system to fight infections, including
      e.  reduced vaccine response.

      f.  Interference with the body's natural hormones.

      g.  Increased cholesterol levels and/or risk of obesity.

---

[11] https://www.atsdr.cdc.gov/pfas/resources/pfas-faqs.html (Last accessed October 24, 2022)

[12] https://www.3m.com/3M/en_US/pfas-stewardship-us/pfas-history/ (Last accessed October 24, 2022).

[13] *Dietary Habits Related to Food Packaging and Population Exposure to PFASs*, Environmental Health Perspectives, https://ehp.niehs.nih.gov/doi/full/10.1289/EHP4092 (Last accessed October 24, 2022).

[14] https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas

32. A figure from the European Environmental Agency ("EEA") shows the "[e]ffects of PFAS on human health:"[15]



33. The EEA article further explained that "[p]eople most at risk of adverse health impacts are those exposed to high levels of PFAS, and vulnerable population groups such as children and the elderly."[16]

---

[15] *Emerging chemical risks in Europe — 'PFAS'*, EUROPEAN ENVIRONMENT AGENCY (Dec. 12, 2019, last modified Mar. 9, 2021) https://www.eea.europa.eu/publications/emerging-chemical-risks-in-europe.
[16] *Id.*

34.     The danger of PFAS chemicals is well known.  On September 20, 2020, a *New York Times* article titled, "These Everyday Toxins May Be Hurting Pregnant Women and Their Babies", reported on the dangers of PFAS—particularly during gestation and in early childhood development:[17]

35.     As a result, the state of New York has enacted a ban on the sale of any food packaging which contains intentionally added PFAS.

36.     Scientists think these widely used industrial chemicals may harm pregnant women and their developing babies by meddling with gene regulators and hormones that control two of the body's most critical functions: metabolism and immunity.[18]

37.     According to the Environmental Protection Agency ("EPA"), limiting exposure to PFAS can help protect individual health.  "Because certain PFAS are known to cause risks to human health, the most important steps you and your family can take to protect your health is to understand how to limit your exposure to PFAS by taking [steps to] reduce possible exposure during daily activities."[19]

38.     There is no treatment to remove PFAS from the body.  Because PFAS accumulates in body tissues over time, the most obvious way to avoid exposure is for consumers to avoid products which they know contain PFAS.[20]

---

[17] Liza Gross, *These Everyday Toxins may be Hurting Pregnant Women and Their Babies*, NEW YORK TIMES (Sept. 23, 2020, updated Oct. 18, 2021) https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html.
[18] https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html
[19] https://www.epa.gov/pfas/meaningful-and-achievable-steps-you-can-take-reduce-your-risk (Last accessed October 24, 2022).
[20] https://www.healthline.com/health-news/how-to-reduce-your-exposure-to-pfas-the-hidden-toxic-forever-chemicals#How-to-limit-PFAS-exposure (Last accessed October 24, 2022).

39.     Defendant is well aware of consumers' desire to avoid potentially harmful chemicals, which is exactly why it has engaged in an aggressive, uniform marketing campaign intended to convince consumers that the Products contain "PURE IRISH BUTTER."

40.     Defendant have engaged in this uniform marketing campaign in an effort to convince reasonable consumers to believe that the Products are superior to other products that do not contain "PURE IRISH BUTTER."

41.     Reasonable consumers purchasing the Products would believe, based on Defendant's representations, that the Products do not contain artificial, synthetic, or man-made chemicals that could adversely impact their health.

***Defendant's Unlawful Conduct***

42.     At all times relevant to this action, Defendant knew, or at minimum should have known, that its Products contain PFAS.

43.     To capitalize on increasing consumer demand for products free from artificial ingredients, including harmful man-made chemicals like PFAS, Defendant has knowingly and willfully deployed a concerted strategy to distinguish its Products from competing options in the highly competitive butter industry by representing the Products as containing "PURE IRISH BUTTER."

44.     Throughout the class period, Defendant has targeted health-conscious consumers by falsely and misleadingly representing the Products as containing "PURE IRISH BUTTER." Consequently, reasonable consumers believe the Products are free of artificial, man-made chemicals known to harm human health.

45.     Defendant is well-aware that consumers are increasingly demanding butter options that support their wellness goals.

46.     At the same time, awareness of, and an inclination toward, safer products is guiding consumer choices.  One survey, for instance, found that "when asked to choose the top three factors they prioritize when deciding between products, the majority of consumers surveyed said they prioritize the health/safety of products (71%) and products free of certain toxic chemicals (70%)."[21]

47.     These findings extend to the packaging of products, with 82% of consumers agreeing that "it is important for brands to balance safety and concern for the environment when designing product packaging."[22]

48.     Additionally, "[t]he majority of shoppers . . . are willing to spend more for a product they know is safer, with 42% willing to spend 5-15% more, 36% willing to spend 16-25% more, and 17% willing to spend 1-5% more."[23]

49.     Therefore, current research demonstrates, and Defendant's marketing strategy supports, that the presence of harmful chemicals in food, beverages, and their packaging is material to reasonable consumers.

50.     Defendant's strategy to stay aligned with consumer preferences in order to retain a competitive advantage in the marketplace, which includes representing to sell butter which does not contain artificial ingredients, would inevitably be negatively impacted if it disclosed the presence of PFAS in their Products.

51.     Defendant knew that the presence of PFAS posed a concern with regard to the safety of the Products.  Despite this knowledge, Defendant failed to disclose the presence of PFAS

---

[21] Made Safe, "What Shoppers Want: Safe & Healthy Products," https://www.madesafe.org/wpconent/uploads/2017/07/What-Shoppers-Want.pdf (last visited Aug. 12, 2022).

[22] Gray, "New Consumer Packaging Trends Are Changing the Game for Food & Beverage Processors," https://www.gray.com/insights/new-consumer-packaging-trends-are-changing-thegame-for-food-beverage-processors/ (last visited Aug. 12, 2022).

[23] Made Safe, "What Shoppers Want," at 3.

in the Products. Such omission was material to consumers.

52.     Consumers lack the expertise to ascertain the true ingredients in the Products prior to purchase. Accordingly, reasonable consumers must, and do rely on Defendant to accurately and honestly advertise their Products' as containing "PURE IRISH BUTTER," and not contradict those representations by using artificial man-made chemicals in their Products that are known to pose a risk to human health.  Such misrepresentations are material to reasonable consumers' purchasing decisions.

53.     Defendant's representations that the Products contain "PURE IRISH BUTTER," including *inter alia*, the representations described herein, are false because products containing toxic, man-made ingredients like PFAS are not "PURE IRISH BUTTER" by definition.

54.     Defendant's representations are likely to mislead reasonable consumers, and indeed did mislead Plaintiff and Class members, regarding the presence of PFAS chemicals in their Products.  Accordingly, these acts and practices by Defendant are deceptive.

55.     Consumers reasonably relied on Defendant's false statements and misleading representations, and reasonably expected that Defendant's Products would conform with their representations and, as such, would not contain artificial, man-made PFAS chemicals.

56.     Defendant's false statements, misleading representations and material omissions are intentional, or otherwise entirely careless, and render their Products worthless or less valuable.

57.     If Defendant had disclosed to Plaintiff and putative Class Members that their Products contained PFAS chemicals, Plaintiff and putative Class Members would not have purchased Defendant's Products or they would have paid less for them.

58.     Plaintiff and Class Members were among the intended recipients of Defendant's deceptive representations and omissions described herein.

59.     Defendant's representations and omissions, as described herein, are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

60.     The materiality of the representations described herein also establishes causation between Defendant's conduct and the injuries Plaintiff and the Class Members sustained.

61.     Defendant is aware that the consumers are concerned about the use of PFAS in their products, yet it has continued to market and advertise their Products using the "PURE IRISH BUTTER," focused representations in order to profit off of unsuspecting consumers, including Plaintiff and Class Members.

62.     The presence of PFAS chemicals in Defendant's Products are entirely inconsistent with their uniform representations.

63.     PFAS are present in Defendant's Products in a quantity which any reasonable person would consider to be significant.

64.     Defendant's knowingly false and misleading representations have the intended result of convincing reasonable consumers that their Products are without "chemical" or "artificial" ingredients and therefore do not contain artificial, man-made, toxic chemicals.  No reasonable consumer would consider Defendant's Products as containing "PURE IRISH BUTTER," if they knew that the Products contained harmful, artificial PFAS chemicals.

65.     Defendant's false, misleading, and deceptive representations, as described herein, are likely to continue to deceive and mislead reasonable consumers and the general public. Indeed, they have already deceived and misled Plaintiff and Class Members.

66.   In making the false, misleading, and deceptive representations, Defendant knew and intended consumers would pay a premium for the Products over comparable products that are made from or contain synthetic or artificial ingredients.

67.   Further, and for the reasons contained herein, Defendant's Products are adulterated under 21 U.S.C. § 342(a)(1) of the United States Food, Drug and Cosmetic Act. ("FDCA").

68.   New York has expressly adopted the federal food labeling requirements as its own. Thus, a violation of federal food labeling laws is an independent violation of New York law and actionable as such.

69.   Plaintiff and Class Members all paid money for the Products, however, they did not obtain the full value of the advertised Products due to Defendant's misrepresentations as detailed herein. Plaintiff and Class Members purchased, purchased more of, or paid more for, the Products than they would have had they known the truth about the Products' artificial, man-made, and harmful ingredients. Thus, Plaintiff and Class Members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

70.   Defendant's widespread marketing campaign portraying the Products as containing "PURE IRISH BUTTER" as detailed herein, is misleading and deceptive to consumers because the Products are made with artificial, man-made, and toxic ingredients. Plaintiff brings this action on behalf of the proposed Classes to stop Defendant's misleading practices.

## PLAINTIFF'S FACTUAL ALLEGATIONS

71.   Plaintiff, Carolyn Winans, is a citizen and resident of the state of New York. During the applicable statute of limitations period, Plaintiff purchased and consumed Defendant's

Products that contained PFAS.  More specifically, during the class period Plaintiff purchased Defendant's Products numerous times at various retail stores in New York City, NY.

72.     Prior to her purchase, Plaintiff reviewed the labeling, packaging, and marketing materials of her Products, including those set out herein.  Thus, Plaintiff understood that based on Defendant's claims, the Products were safe for use and contained "PURE IRISH BUTTER" and thus were free of harmful, man-made chemicals like PFAS.  Plaintiff reasonably relied on these representations and warranties in deciding to purchase the Products, and these representations were part of the basis of the bargain in that she would not have purchased the Products, or would not have purchased it on the same terms, if the true facts had been known.

73.     As a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered and continues to suffer, economic injuries.

74.     Plaintiff continues to desire to purchase the Products from Defendant if she can rely on that Products to be safe and free from any artificial ingredients, including those known to pose a risk to human health.  However, concerned about the health consequences of PFAS and Defendant's misrepresentations detailed herein, Plaintiff is unable to determine if Defendant's Products are actually free of harmful chemicals like PFAS in the future.  Plaintiff understands that the composition of the Products may change over time, but as long as Defendant may freely advertise the Products as safe when they actually contain material levels of PFAS, then when presented with false or misleading information when shopping, she will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's products, which *are* in fact free of PFAS.

75.     Plaintiff also seeks to include an injunction to require the implementation and funding of a blood serum testing program for the Plaintiff and Class Members to test for the presence of PFAS in their blood serum; and the implementation and funding of a medical monitoring program for Plaintiff and Class Members sufficient to monitor Plaintiff and Class Members' health to ensure they are adequately monitored for the harmful effects of PFAS in the human body.

## INJURY TO THE PUBLIC AT-LARGE AND POTENTIAL FOR FUTURE HARM

76.     Defendant's wrongful conduct harms the public-at-large.

77.     PFAS chemicals, also known as "forever chemicals," are a category of highly persistent and toxic man-made chemicals that have been associated with numerous negative health effects for humans.

78.     PFAS chemicals are known to negatively impact the human body, including, but not limited to, decreased fertility, developmental effects or delays in children, increased risk of cancers, liver damage, increased risk of asthma and thyroid disease, adverse impacts on the immune system, interference with hormones and increased cholesterol levels.

79.     Because Defendant's deceptive advertising is ongoing and directed to the public, and because Defendant continue to sell their Products containing PFAS chemicals, the deception poses an ongoing risk to the public.

80.     As such, a public injunction must be provided in order to enjoin Defendant's continued harm of consumers and the public-at-large.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

81.     Defendant had actual knowledge that their Products contained artificial, man-made PFAS chemicals which pose a risk of harm to human health.

82.     Although Defendant was aware of the deception in their advertising, marketing, packaging, and sale of the Products given the inclusion of PFAS chemicals, it took no steps to disclose to Plaintiff or Class Members that their Products contained PFAS chemicals.

83.     Despite their knowledge, Defendant has negligently misrepresented the Products as having qualities and characteristics they do not, while concealing the fact that their Products contain PFAS chemicals.

84.     Defendant made, and continue to make, affirmative false statements and misrepresentations to consumers, and continue to omit the fact that the Products contain PFAS, to promote sales of their Products.

85.     Defendant misrepresented, concealed, and otherwise omitted material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Products.  Defendant's misrepresentations and omissions were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members.  Accordingly, Plaintiff and Class Members reasonably relied upon Defendant's misrepresentations and concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

86.     The PFAS chemicals in the design and/or manufacture of Defendant's Products were not reasonably detectible to Plaintiff and Class Members.

87.     At all times, Defendant actively and intentionally misrepresented the qualities and characteristics of the Products, while concealing the existence of the PFAS chemicals and failing to inform Plaintiff or Class Members of the existence of the PFAS chemicals in their Products. Accordingly, Plaintiff's and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

88.     Defendant's statements, words, and acts were made for the purpose of deceiving the public, and suppressing the truth that the Products contained artificial, man-made PFAS chemicals.

89.     Defendant misrepresented the Products and concealed the PFAS chemicals for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

90.     As a result of Defendant's intentional misrepresentations and active concealment of the PFAS chemicals and/or failure to inform Plaintiff and Class Members of the PFAS chemicals, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.   Furthermore, Defendant is estopped from relying on any statutes of limitations in light of their intentional misrepresentations and active concealment of the inclusion of artificial, man-made PFAS chemicals in the Products.

91.     Further, the causes of action alleged herein did not occur until Plaintiff and Class Members discovered that the Products contained PFAS chemicals.   Plaintiff and Class Members had no realistic ability to discern that the Products contained PFAS chemicals until they learned of the existence of the PFAS chemicals.   In either event, Plaintiff and Class Members were hampered in their ability to discover their causes of action because of Defendant's active concealment of the existence and true nature of the Products.

### **FEDERAL RULE OF CIVIL POROCEDURE 9(b) ALLEGATIONS**

92.     Although Defendant is in the best position to know what content it placed on their packaging, website(s), and other marketing and advertising during the relevant timeframe, and the knowledge that it had regarding the PFAS chemicals and their failure to disclose the existence of PFAS chemicals in the Products to Plaintiff and consumers, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

19

93.     **WHO**: Defendant made their "PURE IRISH BUTTER" and other representations on the Products' packaging, online, and their marketing and advertising of the Products.

94.     **WHAT**: Defendant's conduct here was, and continues to be, deceptive and negligent because of their "PURE IRISH BUTTER" representations. Thus, Defendant's conduct deceived Plaintiff and Class Members into believing that the Products were manufactured and sold with the represented qualities.  Defendant knew or should have known this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet it continued to pervasively market the Products as possessing qualities they do not have.

95.     **WHEN**: Defendant made material misrepresentations, false statements and/or material omissions during the putative Class periods and at the time Plaintiff and Class Members purchased the Products, prior to and at the time Plaintiff and Class Members made claims after realizing the Products contained artificial, man-made chemicals, and continuously throughout the applicable Class periods.

96.     **WHERE**: Defendant's marketing message was uniform and pervasive, carried through false statements, misrepresentations, and/or omissions on the Products' packaging, as well as on website(s) and social media channels used to market and advertise the Products.

97.     **HOW**: Defendant made false statements, misrepresentations and/or material omissions regarding the presence of PFAS chemicals in the Products.

98.     **WHY**: Defendant made the false statements, misrepresentations and/or material omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Products over other brands that did not make

similar "PURE IRISH BUTTER" representations, the effect of which was that Defendant profited by selling the Products to many thousands of consumers.

99.    **INJURY**: Plaintiff and Class Members purchased, paid a premium, or otherwise paid more for the Products when they otherwise would not have, absent Defendant's misrepresentations, false and misleading statements.

## CLASS ACTION ALLEGATIONS

100.    Plaintiff brings this action individually and as the representative of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

> **National Class**: During the fullest period allowed by law, all persons who purchased the Products within the United States for personal use and not for resale.

> **New York Subclass**: During the fullest period allowed by law, all persons who purchased the Products within the state of New York for personal use and not for resale.

101.    Members of the classes described are referred to herein as "Class Members" or members of the "Class."

102.    Plaintiff reserves the right to amend the Class definitions or add a Class or Classes if discovery and/or further investigation reveal that the Class definition(s) should be narrowed, expanded or otherwise modified.

103.    The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file

a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

104.    **Numerosity – Federal Rule of Civil Procedure 23(a)(a)**: While Plaintiff does not know at this time the exact number of proposed Class Members, given the nature of the claims and the volume of sales of the Products nationally, the members of the Class are so numerous that their individual joinder herein is impracticable.  Plaintiff is informed and believes that there are tens of thousands of members in the proposed Class, if not more, and a precise number can be ascertained through discovery. The number of individuals who comprise the Class are so numerous that the disposition of all such person's claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

105.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**: Common questions of law and fact exist as to all members of each of the Class and predominate over questions affecting only individual members of the Class. Such common questions of law or fact include, but are not limited to, the following:

    a.    Whether Defendant misrepresented, omitted, and/or failed to disclose material facts concerning the Products;

    b.    Whether Defendant's conduct was unlawful; unfair; negligent and/or deceptive;

    c.    Whether Defendant breached express warranties to Plaintiff and Class Members;

    d.    Whether Defendant were unjustly enriched as a result of the unlawful conduct alleged herein such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the proposed Class;

    e.    Whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce on behalf of herself and the other Members of the proposed Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

106. **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Class because, among other things, all Members of the Class were comparably injured through Defendant's uniform misconduct described herein. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Class.

107. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Members of the Class she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and she will prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel.

108. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible

standards of conduct for Defendant.  The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

109.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Class to individually seek redress for Defendant's wrongful conduct.  Even if Members of the Class could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**Violation of the New York Deceptive Trade Practices Act,**
**New York Gen. Bus. Law § 349, *et seq.***
**(Plaintiff on behalf of the New York Subclass)**

110.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

111.    The New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

112.    Defendant misleadingly, inaccurately, and deceptively advertises and markets their Products to consumers.

113.    Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as containing "PURE IRISH BUTTER" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements, omissions, and representations willfully, wantonly, and with reckless disregard for the truth.

114.    Defendant also violated § 349 in that they omitted from their labeling the fact that the Product contains dangerous levels of PFAS.  Defendant maintained exclusive control over the contents of the packaging and the Product, this is not information that Plaintiff could have obtained prior to purchase.  Indeed, this information was possessed by Defendant alone.

115.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that were - contrary to Defendant's representations— not made with "PURE IRISH BUTTER" and did contain dangerous levels of the man-made chemical PFAS. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

116.    Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price.

117.    Defendant's omission of the fact that the Products contained, or were at risk of containing, dangerous levels of PFAS induced Plaintiff and the New York Subclass Members to buy Defendant's Product and to pay a premium price for the Products.

118.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

119.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

120.     In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

121.     Finally, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II
### Violation of the New York Deceptive Trade Practice Act,
### New York Gen. Bus. Law § 350, *et seq.*
### (Plaintiff on behalf of the New York Subclass)

122.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

123.     The N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

124.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

125.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning Defendant's Products inasmuch as they misrepresent that the Products contain "PURE IRISH BUTTER" ingredients and is free of PFAS.

126.    Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were—contrary to Defendant's representations—did contain dangerous levels of PFAS. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

127.    Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

128.    Defendant made the untrue and/or misleading statements, omissions, and representations willfully, wantonly, and with reckless disregard for the truth.

129.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

130.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' packaging and labeling.

131.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

132.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

133.    In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

134.    Finally, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT III
### Breach of Express Warranty
### (Plaintiff on Behalf of the Class)

135.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

136.    At Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased the Products.

137.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Products packaging and through marketing and advertising, as described above.

138.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and Class Members.

139.    As set forth above, Defendant purport through their advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe for consumption and contain "PURE IRISH BUTTER."

140.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

141.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' decision to purchase the Products.

142.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

143.     Plaintiff and Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

144.     Defendant thereby breached the following state warranty laws:

a.     Code of Ala. § 7-2-313;

b.     Alaska Stat. § 45.02.313;

c.     A.R.S. § 47-2313;

d.     A.C.A. § 4-2-313;

e.     Cal. Comm. Code § 2313;

f.     Colo. Rev. Stat. § 4-2-313;

g.     Conn. Gen. Stat. § 42a-2-313;

h.     6 Del. C. § 2-313;

i.     D.C. Code § 28:2-313;

j.     Fla. Stat. § 672.313;

k.     O.C.G.A. § 11-2-313;

l.     H.R.S. § 490:2-313;

m.     Idaho Code § 28-2-313;

n.     810 I.L.C.S. 5/2-313;

o.     Ind. Code § 26-1-2-313;

p.     Iowa Code § 554.2313;

q.     K.S.A. § 84-2-313;

r.     K.R.S. § 355.2-313;

s.     11 M.R.S. § 2-313;

t.     Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

145.    Within a reasonable time after they knew or should have known, Defendant did not change the Products' label to stop the deceptive acts and practices by falsely warranting that their Products were a made from "PURE IRISH BUTTER," and by falsely omitting that their Products contained material levels of PFAS.

### COUNT IV
### Negligent Misrepresentation
### (Plaintiff On Behalf of the Class)

146.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

147.    As alleged above, Defendant misrepresented the health and safety of their Products and omitted that the Products contained PFAS. These misrepresentations and omissions constituted a material fact (i.e. a consumer's decision to purchase the Products would be influenced by its health and safety and the presence of PFAS).

148.    Defendant's misrepresentations and omissions were made in the course of business transactions (the marketing, advertisement, sale, and purchase of the Products) in which both Plaintiff and Defendant have a pecuniary interest.

149.    Defendant knew (or should have known) that these representations and omissions were false and/or misleading and failed to exercise reasonable care in dissemination of the information contained on its labels and in its marketing and advertising.

150.    Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of their Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

151.    Defendant has a duty to provide consumers, like Plaintiff and Class Members, with safe products.

152.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as PFAS, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain on the Products' packaging and/or labeling.

153.    Defendant intended that their representations and omissions would induce consumers like Plaintiff and Class Members into purchasing the Products.

154.    Because of Defendant's misrepresentations, Plaintiff is now at a heightened risk of having elevated levels of PFAS in both her body and bloodstream.

155.    Plaintiff's injuries were proximately caused by Defendant's misrepresentations and omissions.   Plaintiff viewed Defendant's labels prior to purchasing the Products, and the representations that the Products were healthy and safe prompted him to purchase the Products. Had Plaintiff been aware of Defendant's misrepresentations and omissions, she would have been unwilling to purchase the Products, or to purchase them at the price that she paid.

## COUNT V
### Violation of the New York State Agriculture & Markets Law
### N.Y. Agric. & Mkts. Law §§ 199-a

156.   Plaintiff repeats and re-alleges the allegations above as if set forth herein.

157.   Section 199-a of the New York Agriculture and Markets Law ("N.Y. Agric. & Mkts. Law") prohibits persons and corporations from manufacturing or selling in this state "any article of food which is adulterated or misbranded within the meaning of this statute."

158.   Food is considered adulterated if it "contains any poisonous or deleterious substance which may render it injurious to health."  N.Y. Agric. & Mkts. Law § 200(1).

159.   Food is considered misbranded if its "labeling is false or misleading in any particular."  N.Y. Agric. & Mkts. Law § 201(1).

160.   Defendant violates Section 199-a insofar as they manufacture and sell the Products, which are both adulterated and misbranded.

161.   The Products are "adulterated" because they contain PFAS which is undisputedly a deleterious substance.

162.   The Product is "misbranded" because (a) its labeling contains the several affirmative misrepresentations detailed herein which represent that the Products are "Pure" when they actually contain dangerous synthetic PFAS; and (b) their labeling fails to identify the fact that they contain, or are at risk of containing, PFAS.

## COUNT VI
### Negligence Per Se

163.   Plaintiff repeats and re-alleges the allegations above as if set forth herein.

164.   Violation of a statute constitutes per se negligence where it can be shown that a plaintiff belongs to the class of legislatively intended beneficiaries and that a right of action would be clearly in furtherance of the legislative purpose.

165.    Defendant is liable for negligence per se due to their violations of the Food Drug and Cosmetics Act (21 U.S.C. §§ 342, 343), described herein.  The Product is "adulterated" because it contains PFAS which is undisputedly a deleterious substance.

166.    Pursuant to 21 U.S.C. § 342, food is considered "adulterated" if it "contains any poisonous or deleterious substance which may render it injurious to health."

167.    Pursuant to 21 U.S.C. § 343, food is deemed "misbranded" if its "labeling is false or misleading in any particular."  The Products are "misbranded" because (a) their labeling contains the several affirmative misrepresentations detailed herein which represent that the Products are "Pure" when they actually contain dangerous synthetic PFAS; and (b) their labeling fails to identify the fact that they contain, or are at risk of containing, PFAS.

168.    In addition, should this Court determine that Plaintiff lacks a private right of action under Section 199-a of the New York Agriculture and Markets Law (N.Y. Agric. & Mkts. Law), Defendant's violations of that statute (*see* Count V, above) amount to negligence per se under New York law.

169.    Both the N.Y. Agric. & Mkts. Law and the FDCA are designed to protect consumers like Plaintiff from products, like the Products, which are adulterated with dangerous substances and/or labeled in a deceptive manner.  Accordingly, Defendant's violations of these statutes subject it to liability for negligence per se under New York law.

<u>COUNT VII</u>
**Unjust Enrichment**
**(In the Alternative and on Behalf of the Class)**

170.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

171.    At all relevant times, Defendant was responsible for designing, constructing, testing, manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling the

Products and their packaging.  At all relevant times, it was reasonably foreseeable by Defendant that the use of the Products in their intended manner involved substantial risk of injury and was unreasonably dangerous to Plaintiff and the Class as the ultimate users of the Products.

172.    At all relevant times, Defendant knew or had reason to know of the risk of injury and the resultant harm that the Products posed to Plaintiff and Class Members, as the Defect existed at the time of their design, construction, manufacture, inspection, distribution, labeling, marketing, advertising, and/or sale, as described herein.

173.    Defendant as the designer, manufacturer, tester, distributor, marketer, advertiser, and/or seller of the Products, had a duty to warn Plaintiff and the Class of all dangers associated with consumption of the Products.

174.    At minimum, the duty arose for Defendant to warn consumers that use of the Products could result in injury and was unreasonably dangerous.

175.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Class.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's representations regarding the quality or value of the Products were misleading to consumers, which caused injuries to Plaintiff and the other members of the Class, because they would have not purchased the Products had they known the truth or would only have purchased the Products for a lower price.

176.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the Class for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated members of the Class, prays for relief and judgment, including entry of an order, as follows:

(a) Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

(b) Directing that Defendant bear the costs of any notice sent to the Class;

(c) Ordering Defendant to pay restitution to Plaintiff and the Class;

(d) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to PFAS;

(e) A jury trial and damages according to proof;

(f) Awarding actual damages to Plaintiff and the Class;

(g) Awarding Plaintiff and members of the Class statutory damages, as provided by the applicable state consumer protection statutes invoked above;

(h) Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class;

(i) Civil penalties, prejudgment interest and punitive damages as permitted by law; and

(j) Ordering such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial of the claims asserted in this Class Action Complaint.

Dated: June 12, 2023                    Respectfully submitted,


_/s/ Jason P. Sultzer_
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Gary Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Erin Ruben*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
eruben@milberg.com

Russell Busch (6329500)
J. Hunter Bryson*
Zoe T. Aaron*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
rbusch@milberg.com
hbryson@milberg.com
zaaron@milberg.com

* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed
Class*