

February 14, 2024

Courtney J. Peterson
Partner
Direct:  +1 212 541 3187
Fax:  +1 212 541 1487
courtney.peterson@bclplaw.com

BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York  NY 10104 3300
T: +1 212 541 2000
F: +1 212 541 4630
bclplaw.com

The Hon. District Judge Frederic Block
U.S. District Court – Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**RE:    Notice of Supplemental Authority –** *Winans v. Ornua Foods North America, Inc.*, **2:23-cv-01198-FB-RML**

Dear Judge Block:

Ornua Foods North America, Inc. ("Ornua") submits the attached decisions entered by district courts in the Second Circuit after Ornua submitted its motion to dismiss ("Motion") and that are relevant to its pending Motion. ECF No. 27 at 4–7. In these cases (brought by Plaintiff's counsel), the courts held plaintiffs lacked standing to pursue claims that defendants' product labels were misleading because plaintiffs failed to plausibly allege a cognizable injury-in-fact—i.e., that the products they purchased actually contained per- and polyfluoroalkyl substances ("PFAS").

In *Esquibel v. Colgate-Palmolive Co.*, 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023), plaintiffs alleged third-party testing "detected material levels of multiple PFAS" in defendant's mouthwash, including PFOA "in amounts 85 times the EPA's recommended levels." The court dismissed plaintiffs' claims for lack of standing, as they had not alleged the bottles "they actually purchased were tested, nor [did] they even plead facts indicating how many units of the [p]roduct were tested, where those units were acquired, where the test took place, or what entity performed the test." *Id.* Based on these "sparse factual allegations," the court held plaintiffs' claims could not amount to anything more than a "sheer possibility," falling short of an Article III injury-in-fact. *Id.*

In *Hernandez v. Wonderful Co. LLC*, 2023 WL 9022844, at *6 (S.D.N.Y. Dec. 29, 2023), the plaintiff alleged that third-party testing revealed PFAS in defendant's juice products. However, the plaintiff did not test the bottles she actually purchased, nor did she provide sufficient details about the testing to allow the court to plausibly conclude she purchased products containing PFAS. *Id.* The court dismissed plaintiff's claims, noting: "[W]here it is only 'likely' a plaintiff might have purchased mislabeled products, and the plaintiff thus seems impermissibly to ask the Court to infer an injury for her, no standing exists." *Id.* (internal citations and quotations omitted).

Here, Plaintiff has not alleged any testing to nudge her claims from possible to plausible. *See* First Amended Complaint ("FAC"), ECF No. 20. Indeed, Plaintiff's FAC offers no more than a 'sheer possibility' that the products she purchased contained PFAS. As in *Hernandez* and *Esquibel*, Plaintiff's claims should be dismissed for lack of standing.

February 14, 2024
Page 2



Respectfully,

*Courtney J. Peterson*

**Courtney J. Peterson**
Partner

CJP

cc:  All counsel of record

2023 WL 7412169
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Abigail ESQUIBEL, Tammy Searle, Jeremy Wahl, Aimen Halim and Nicholas Salerno, individually and on behalf of all others similarly situated, Plaintiffs,
v.
COLGATE-PALMOLIVE CO., and Tom's of Maine, Inc., Defendants.

23-CV-00742-LTS
|
Signed November 9, 2023

**Attorneys and Law Firms**

Daniel Harris Markowitz, Mindy Dolgoff, The Sultzer Law Group P.C., New York, NY, Jason P. Sultzer, Joseph Lipari, Philip John Furia, The Sultzer Law Group, P.C., Poughkeepsie, NY, John Hunter Bryson, Milberg Coleman Bryson Phillips Grossman, PLLC, Raleigh, NC, Nick Suciu, III, Milberg Coleman Bryson Phillips Grossman, PLLC, Bloomfield Hills, MI, Russell Busch, Milberg Coleman Bryson Phillips Grossman PLLC, Knoxville, TN, for Plaintiffs.

Keith Edward Smith, Greenberg Traurig, LLP, Philadelphia, PA, Jaclyn DeMais, Greenberg Traurig, LLP, New York, NY, Libretta Stennes, Greenberg Traurig, LLP, Minneapolis, MN, for Defendants.

MEMORANDUM ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge

**\*1** Abigail Esquibel, Tammy Searle, Jeremy Wahl, Aimen Halim, and Nicholas Salerno ("Plaintiffs") bring this proposed class action against Colgate-Palmolive Co. and Tom's of Maine, Inc. ("Defendants") asserting claims for violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, et seq.), violation of California's False Advertising Law (Business & Professions Code § 17500), violation of California's Unfair Competition Law (Business & Professions Code § 17200, et seq.), violation of California's Consumer Legal Remedies Act (Civil Code § 1770), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1, et seq.), breach of express warranty, fraud, constructive fraud, and unjust enrichment. (Docket entry no. 30 ("Am. Compl.") ¶ 12.) Plaintiffs assert that this Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act (28 U.S.C. § 1332(d)). (Am. Compl. ¶ 20.)

Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), failure to meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b), and under the primary jurisdiction doctrine. (Docket entry no. 39 ("Defs. Mem.") at 1-5.)

The Court has considered the parties' submissions carefully and, for the following reasons, grants the Defendants' motion to dismiss the Amended Complaint in its entirety for lack of subject matter jurisdiction. Plaintiffs are granted leave to move to replead within 21 days of the entry of this Memorandum Order.

BACKGROUND

Unless otherwise indicated, the following allegations are taken from the Amended Complaint and are presumed true for the purposes of this motion. Defendant Tom's of Maine ("Tom's") is a Maine corporation that makes and sells personal care products. (Am. Compl. ¶¶ 19, 23.) Tom's markets its products as "natural," and produced using "naturally sourced and naturally derived ingredients." (Id. ¶¶ 26, 108.) Defendant Colgate-Palmolive has been the majority owner of Tom's since 2006. (Id. ¶ 23.) Plaintiffs Esquibel, Searle, Wahl, Halim, and Salerno are California and Illinois residents who purchased Tom's Wicked Fresh! Mouthwash ("the Product") for personal use numerous times between 2021 and 2023. (Id. ¶¶ 142-61.) Plaintiffs Esquibel, Searle, Wahl, and Halim most recently bought the Product from brick-and-mortar retailers in California and Illinois. (Id. ¶¶ 142-57.) Plaintiff Salerno most recently bought the Product online through Amazon's website. (Id. ¶ 158.)

Plaintiffs allege that the Product contains per- and polyfluoroalkyl substances ("PFAS"). (Am. Compl. ¶¶ 1, 67.) PFAS are man-made chemicals that have been called "forever chemicals," because the human body cannot break them down or remove them. (Id. ¶¶ 44-46.) Peer-reviewed studies

have found that PFAS exposure can lead to serious medical conditions, including various kinds of cancers, thyroid disease, liver damage, decreased fertility, and developmental delays in children. (Id. ¶¶ 52-53.) Humans can be exposed to PFAS in numerous ways, including through ingestion, inhalation, and skin absorption. (Id. ¶ 50.)

**\*2** Plaintiffs assert that they ascertained the presence of PFAS in the Product through "independent third-party testing" that they commissioned. (Am. Compl. ¶¶ 65-67.) This testing "was conducted in accordance with accepted industry standards for detecting the presence of PFAS" and "detected material levels of multiple PFAS" in the Product. (Id. ¶¶ 66-67.) The testing revealed that the Product contains PFOA—a type of PFAS that has been linked to negative health effects—"in amounts 85 times the EPA's recommended levels" of PFOA exposure. (Id. ¶¶ 68-73.)

Plaintiffs assert that "Defendants knew, or at minimum should have known, that its [sic] Product contains PFAS," because Defendants are "large, sophisticated corporations in the business of manufacturing ... 'natural' personal care products." (Am. Compl. ¶¶ 105-106.) Plaintiffs further assert that, given Defendants' commitment to using quality ingredients, they should have detected the presence of PFAS in the Product during the manufacturing process. (Id. ¶ 107.) Plaintiffs claim that, by marketing the Product as natural even though it was contaminated with PFAS and by failing to list PFAS on the Product's ingredients list or otherwise warn consumers about their presence in the Product, Defendants engaged in fraud, false advertising, and deceptive business practices. (Id. ¶¶ 98, 108, 110, 140.)

DISCUSSION

An action must be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. Fed. R. Civ. P. 12(b)(1); see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113. When determining a motion to dismiss an action for lack of subject matter jurisdiction, the Court must accept all factual allegations pled in the Complaint as true, Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006), but the Court may also consider relevant materials beyond the pleadings. Makarova, 201 F.3d at 113. To survive a motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a claim to be plausible, the plaintiff must plead facts that raise the likelihood that the defendant acted unlawfully above "a sheer possibility." Iqbal, 556 U.S. at 678.

Article III of the Constitution of the United States restricts the jurisdiction of federal courts to actual cases or controversies. See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). To demonstrate Article III standing, a plaintiff must establish: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of; and (3) redressability of the injury by a "favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). To satisfy the injury-in-fact requirement, a plaintiff must allege facts showing that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. at 560. In a potential class action, the named plaintiffs must satisfy the requirements of Article III standing. See Lewis v. Casey, 518 U.S. 343, 357 (1996). Plaintiffs cannot rely on the standing of unnamed potential class members. Id. at 357.

The Court finds that Plaintiffs lack standing to pursue their claims because they have not shown that they suffered an injury-in-fact. Plaintiffs' claims are based on their allegation that the bottles of mouthwash they purchased contained PFAS. Their complaint does not, however, plead facts sufficient to support a plausible inference that the bottles Plaintiffs purchased were tainted. Plaintiffs plead that the Product contained PFAS based solely on a third-party test they had commissioned. (Am. Compl. ¶¶ 65-67.) Plaintiffs plead that the testing "was conducted in accordance with accepted industry standards for detecting the presence of PFAS" and "detected material levels of multiple PFAS ...." (Am. Compl. ¶¶ 66-67.) Plaintiffs provide no additional information about the test. They do not allege that bottles they actually purchased were tested, nor do they even plead facts indicating how many units of the Product were tested, where those units were acquired, where the test took place, or what entity performed the test. On the basis of Plaintiffs' sparse factual allegations, the Court cannot conclude that the presence of

PFAS in bottles that Plaintiffs purchased was anything more than a "sheer possibility." See [Iqbal, 556 U.S. at 678](#).

**\*3** The allegations in Plaintiffs' claim are substantively similar to, and fail for the same reasons as, the claims brought in [Onaka v. Shiseido Americas Corp., No. 21-CV-10665-PAC, 2023 WL 2663877, at \*1 (S.D.N.Y. Mar. 28, 2023)](#). In that case, plaintiffs asserted that the beauty products they purchased contained PFAS based on third-party testing which detected the chemicals in each type of product plaintiffs purchased. [Onaka, 2023 WL 2663877, at \*2](#). As here, plaintiffs claimed that defendant committed fraud by marketing its products as "natural" even though they were contaminated with PFAS. Id. The court found that plaintiffs had not alleged sufficient facts to establish that the products they actually purchased were contaminated, and thus that they had suffered an injury-in-fact. [Id. at \*5](#). The court noted that plaintiffs had not stated when the third-party testing occurred, whether the testing was "reasonably near in time" to plaintiffs' purchases, or whether they had tested the specific products they purchased. [Id. at \*4](#). Altogether, the factual allegations did not establish that it was more than "a sheer possibility" that either the specific products plaintiffs purchased contained PFAS or that "the presence of PFAS in the products [was] so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once." [Id. at \*4-5](#). [1]

Plaintiffs argue that their testing allegations are sufficient because they "are not required to prove the accuracy or rigor of the methodology used in their testing results" at the motion to dismiss stage and because "Onaka does not create any legal requirement for plaintiffs to test their personal products for PFAS contamination in order to establish injury in fact." (Docket entry no. 42 ("Pls. Mem.") at 13-14.) These arguments misconstrue the nature of the problem at this pleading stage. Plaintiffs' claims are not deficient because they failed to defend the accuracy of their test's methodology. Rather, the claims are inadequate because Plaintiffs have pled insufficient information about the third-party testing to support their assertion that the products the named Plaintiffs purchased plausibly contained PFAS. The Court does not read Onaka as establishing a legal requirement that plaintiffs must test the specific units they purchased for PFAS in order to establish injury-in-fact. There are other ways Plaintiffs could have established the plausibility of their injury. For example, Plaintiffs might have pled facts that raised a plausible inference that the Product was systemically contaminated such that any bottle of the Product, including the ones Plaintiffs purchased, likely contained PFAS. See [John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 734 (2d Cir. 2017)](#) (finding a sufficiently likely injury where plaintiff alleged that Whole Foods overcharged him personally, as evidenced by a test of 80 different Whole Foods products that found that all 80 products had packaging with misstated weights).

Alternatively, Plaintiffs assert that the mere risk that the mouthwash they purchased could have contained PFAS, by itself, constitutes an injury-in-fact, because they would not have bought the Product or would have paid less for it had they known that such a risk existed. (Am. Compl. ¶ 99.) The mere risk that the Product was contaminated with an injurious substance, however, does not establish an economic injury. See [Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1030 (8th Cir. 2014)](#) ("[I]t 'is not enough' for a plaintiff 'to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.' " (emphasis in original)). In other words, to establish an injury-in-fact, Plaintiffs must plausibly allege the presence of PFAS in the mouthwash they purchased because, if PFAS were not present, then Plaintiffs received exactly what they bargained for—a natural mouthwash.

### LEAVE TO FILE MOTION TO AMEND

**\*4** Plaintiffs have requested leave to replead in the event the Amended Complaint is dismissed. (Pls. Mem. at 28.) " 'Leave to amend, though liberally granted, may properly be denied' for 'repeated failure to cure deficiencies by amendments previously allowed' or 'futility of amendment,' among other reasons." Bischoff v. Albertsons Cos., No. 22-CV-4961-CS, 2003 WL 4187494, at \*7 (S.D.N.Y. June 26, 2023) (quoting [Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008)](#)). Still, there is a particularly strong preference for allowing amendment when "the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading." [Allianz Glob. Invs. GmbH v. Bank of Am. Corp., 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020)](#); see also [Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015)](#) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Although Plaintiffs

have already amended their complaint once following a prior round of briefing in which Defendants alerted Plaintiffs to the potential deficiencies in their argument for standing, Plaintiffs did not previously have the benefit of a Court ruling putting them on notice of these deficiencies. In the interests of justice, Plaintiffs are granted leave to file a motion to amend, tendering a proposed second amended complaint that meets the requirements of constitutional standing as discussed above.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint for lack of subject matter jurisdiction is granted in its entirety. Plaintiffs may file a motion for leave to file a Second Amended Complaint that is compliant with the requirements of constitutional standing discussed above. Any such motion must comply with the applicable federal, local, and individual rules of practice and include Plaintiffs' proposed Second Amended Complaint, as well as a redline comparing that pleading to Plaintiffs' Amended Complaint. Should Plaintiffs fail to file a motion for leave to amend **within 21 days of the entry of this Memorandum Order**, this action will be dismissed for lack of subject matter jurisdiction without further advance notice. This Memorandum Order resolves Docket Entry no. 38.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 7412169

## Footnotes

1   Other recent cases in this district involving alleged PFAS contamination have also been dismissed for a lack of standing where plaintiffs failed to plead sufficient facts to plausibly establish that the products they purchased actually contained PFAS. See Hicks v. L'Oréal U.S.A., Inc., No. 22-CV-1989-JPC, 2023 WL 6386847, at *10 (S.D.N.Y. Sept. 30, 2023) (finding plaintiffs lacked standing despite a test showing PFAS in makeup products because "Plaintiffs have not adequately pleaded that the mascaras they purchased contained PFAS ...." (emphasis added)); Dalewitz v. Procter & Gamble Co., No. 22-CV-07323-NSR, 2023 WL 6215329, at *3 (S.D.N.Y. Sept. 22, 2023) (finding plaintiff lacked standing because his alleged testing merely demonstrated the presence of fluorine—a proxy for the presence of PFAS—in defendant's product, and, as a result, "Plaintiff fails to plausibly allege [the product] in fact contains PFAS ....").

2023 WL 9022844
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Bertha HERNANDEZ, individually and on behalf of all others similarly situated, Plaintiff,
v.
The WONDERFUL COMPANY LLC and POM Wonderful LLC, Defendants.

23-cv-1242 (ER)
|
Signed December 29, 2023

**Attorneys and Law Firms**

John Hunter Bryson, Milberg Coleman Bryson Phillips Grossman, PLLC, Raleigh, NC, Nick Suciu, III, Milberg Coleman Bryson Phillips Grossman, PLLC, Bloomfield Hills, MI, Philip John Furia, Jason P. Sultzer, The Sultzer Law Group, P.C., Poughkeepsie, NY, for Plaintiff.

Reid Davis, The Wonderful Company Roll Law Group, Los Angeles, CA, Elizabeth Austin Edmondson, Jenner & Block LLP, New York, NY, Kate Spelman, Jenner & Block LLP, Los Angeles, CA, for Defendants.

**OPINION & ORDER**

Ramos, United States District Judge:

**\*1** Bertha Hernandez brought this putative class action alleging violations of consumer protection laws based on the presence of certain synthetic chemicals in pomegranate juice produced, marketed, and sold by The Wonderful Company LLC and its wholly owned subsidiary POM Wonderful LLC (together, "Defendants"). Doc. 1. Before the Court is Defendants' motion to dismiss the suit in its entirety. Doc. 27. For the reasons set forth below, the motion is granted.

**I. BACKGROUND**

**A. Factual Background**

Defendants manufacture and sell POM Wonderful® 100% Pomegranate Juice drink ("the Product") at mass market retailers and grocery stores throughout the United States. Doc. 24 (First Amended Class Action Complaint ("FAC")) ¶¶ 4, 22). Hernandez alleges that she purchased and consumed the Product on numerous occasions at various retail stores in New York, New York in July 2022. *Id.* ¶ 87.

She purchased the Product relying upon the representations set out in Defendants' labelling and marketing materials that the Product was "safe for use and was a 100% juice beverage containing 'All Natural' ingredients." *Id.* ¶ 88. Defendants' representations with respect to the Product include:

- The front label of the product describes it as an "Antioxidant Superpower." *Id.* ¶ 25.

- The cap on the Product reads "100% POMEGRANATE JUICE" and lists the slogan "Drink It Daily. Feel It Forever." *Id.* ¶¶ 26–27.

- The back label states the Product includes "4 CALIFORNIA POMEGRANATES," "No Sugar Added," and "100% JUICE FROM 4 CALIFORNIA POMEGRANATES ALL NATURAL." *Id.* ¶ 27.

- The only ingredient listed on the Product's packaging is "100% pomegranate juice from concentrate." *Id.*

- Defendants' website represents that the Product is "Tree to Table" and links to scientific studies purporting to demonstrate that the Product is a healthy choice for consumers. *Id.* ¶¶ 28–29.

- Defendants' social media campaigns for the Product also emphasize that the Product is a source of antioxidants, and consumers can "[s]upercharge [their] health with antioxidants" from the product. *Id.* ¶¶ 30–31.

Contrary to Defendants' representations that the Product is all natural, however, Hernandez alleges that it actually contains per- and polyfluoroalkyl substances ("PFAS"), which are synthetic chemicals harmful to humans and the environment. *Id.* ¶¶ 1–3, 34–35. PFAS are also sometimes referred to as "forever chemicals" because they bioaccumulate, or build up in the body over time, but are harmful even in small doses. *Id.* ¶¶ 2, 36–48. Because PFAS are, by definition, man-made, they are not "natural." *Id.* ¶ 35. Hernandez's independent testing in July 2022 detected material levels of PFAS in the Product, including: 2.5 parts per trillion ("PPT") of 1H, 2H, 2H-perfluorooctane sulfonic acid and 6.5 PPT of perfluoro-n-pentanoic acid, which Hernandez alleges is above guidance from the U.S. Environmental Protection Agency ("EPA") as to acceptable levels of PFAS in drinking water. *Id.* ¶¶ 49– 54. Although Hernandez tested the Product,[1] it was not the particular bottle(s) that she purchased and consumed,

meaning she could only allege that it "is plausible that [her] Product contained PFAS." *Id.* ¶ 49, 89.

**\*2** Had Hernandez known that the Product contained PFAS, she would not have purchased it or would have paid less for it, and she alleges she therefore suffered and continues to suffer economic injuries. *Id.* ¶¶ 88–90.

### B. Procedural Posture

On February 14, 2023, Hernandez filed the instant putative class action on behalf of all persons who, "[d]uring the fullest period allowed by law, ... purchased the Product within the United States for personal use and not for resale" ("the Class") with a subclass of persons who purchased the Product within New York ("the New York Subclass"). Doc. 1; Doc. 24 ¶ 114. She brings claims for violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301), breach of express warranty based on violations of the warranty laws of 40 states, negligence per se, and unjust enrichment. Doc. 24. She also brings claims for violations of the New York Deceptive Trade Practices Act (N.Y. Gen. Bus. L. §§ 349–50) and New York State Agriculture and Markets Law (N.Y. Agric. & Mkts. L. § 199-a). *Id.* Hernandez amended the class action complaint on June 9, 2023. *Id.*

Defendants filed the instant motion to dismiss on June 30, 2023 pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim. Doc. 27. Defendants also request the Court take judicial notice of certain exhibits to their motion to dismiss (Doc. 28), which Hernandez opposes (Doc. 31).

## II. LEGAL STANDARDS

### A. Lack of Standing and Subject-Matter Jurisdiction Pursuant to Rule 12(b)(1)

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject-matter jurisdiction as the "threshold question" (quotation marks omitted)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (internal quotation marks and citation omitted). However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action. *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (citation omitted); *see also FW/PBS, Inc. v. City Of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and if the plaintiff fails to "clearly [ ] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," he does not have standing under Article III. (internal quotation marks and citation omitted)).

**\*3** In resolving a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), a district court may consider evidence outside the pleadings. *Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).

### B. Failure to State a Claim Pursuant to Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint ... does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*, No. 20-cv-1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

### III. DISCUSSION

#### A. Defendants' Request for Judicial Notice is Granted, in that the Court Can Take Notice of the *Existence* of Agency Regulatory Guidance on PFAS

In support of their motion to dismiss, Defendants submit as exhibits: (1) a webpage from the EPA titled "PFAS Explained"; (2) a webpage from the EPA titled "Our Current Understanding of the Human Health and Environmental Risks of PFAS"; (3) a webpage from the Agency for Toxic Substances and Disease Registry ("ATSDR")[2] titled "Per- and Polyfluoroalkyl Substances (PFAS) and Your Health; What are PFAS?"; (4) a webpage from the EPA titled "Per- and Polyfluoroalkyl Substances (PFAS); Proposed PFAS National Primary Drinking Water Regulation"; (5) a webpage from the U.S. Food and Drug Administration titled "Per- and Polyfluoroalkyl Substances (PFAS)"; and (6) a webpage from healthline.com titled "How to Reduce Your Exposure to PFAS: the Hidden Toxic 'Forever Chemicals,' " which Hernandez cited in the FAC. Doc. 29 at 2–3. Defendants contend that, even on a motion to dismiss, the Court may take judicial notice of the first five exhibits as documents retrieved from official government websites, and the sixth exhibit was incorporated by reference into the FAC. *Id.* at 3–4.

**\*4** Hernandez concedes that the sixth exhibit was incorporated by reference into the complaint and therefore properly before the Court, but she disputes that the other five are properly judicially noticeable without converting the motion to dismiss into a motion for summary judgment. Doc. 31 at 3–4. Moreover, even if the Court did take notice of the exhibits, they may not be relied upon for the truth of the matter asserted, as opposed to their mere existence. *Id.* at 8–9. Hernandez therefore asks the Court to strike Defendants' first five exhibits and any references thereto. *Id.* at 9.

Defendants reply that "[t]he Court can (and should) take judicial notice of [the exhibits] because they consist of publicly available documents retrieved from official government websites that are *not offered to establish the truth of the matter asserted*, but rather offered to establish the fact that the EPA, FDA, and ATSDR have published regulatory guidance on PFAS," as Hernandez has conceded is permissible. Doc. 32 at 2 (emphasis in original).

Accordingly, the Court will take judicial notice of the exhibits only for the fact of their existence (*i.e.*, for the fact that the three agencies have issued regulatory guidance on PFAS) and not for the truth of information contained therein. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citing *Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991)); *Cali v. E. Coast Aviation Servs.*, 178 F. Supp. 2d 276, 287 n.6 (E.D.N.Y. 2001).

#### B. Defendants' Motion to Dismiss is Granted Pursuant to Rule 12(b)(1)

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether the complaint states a claim. *See Darby Trading*, 568 F. Supp. 2d at 335 (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)); *Yellow Page Solutions Inc. v. Bell Atl. Yellow Pages Co.*, No. 00-cv-5663 (MM), 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (citation omitted). Accordingly, the Court first addresses Defendants' arguments as to standing and subject-matter jurisdiction before turning to Defendants' 12(b)(6) arguments.

*1. Hernandez Fails to Establish Article III Standing, and the Court Therefore Lacks Subject-Matter Jurisdiction*

Defendants challenge that Hernandez lacks Article III standing—and therefore that this Court lacks subject-matter jurisdiction—because the FAC does not allege facts plausibly demonstrating that any bottles of the Product that she specifically purchased was adulterated with harmful PFAS; and, even if her bottle(s) were adulterated, that cannot be extrapolated to all bottles of the Product. Doc. 28 at 13–15. Moreover, regardless if the Product contains PFAS, Hernandez's theory of economic harm (that she would not have purchased the Product, or would have purchased it at a lower price, had she known of the PFAS) is not a legally cognizable injury absent identification of either past harm to one's health from consumption of the Product or an imminent risk of future harm. *Id.* at 16–19.

Hernandez responds that she has plausibly alleged that the bottle she consumed of the Product contained PFAS, which is all she must do at the pleading stage, because both the testing of a sample of the Product and her purchase of the Product occurred in July 2022. Doc. 30 at 14–17. It is not fatal to standing that she did not actually test the bottle she purchased and consumed so long as the testing was reasonably near in time to her purchase. *Id.* at 15. Further, Hernandez argues that courts in this Circuit routinely accept price premium theories of standing in cases involving misrepresentations that a product is "natural." *Id.* at 17–19.

**\*5** To establish standing under Article III of the Constitution, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must have a "personal stake" in the case in order to have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (stating that the injury-in-fact requirement is "a low threshold," which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy" (citations omitted)). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2206; *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021). As the Supreme Court has explained, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S. Ct. at 2205 (citation omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Harty v. West Point Realty, Inc.*, 477 F. Supp. 3d 163, 167 (S.D.N.Y. 2020), *aff'd*, 28 F.4th 435 (2d Cir. 2022) (citation omitted). "[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (summary order).

Moreover, in a putative class action, the named plaintiff must allege that she was personally injured by defendants' conduct. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005). To establish class standing, a plaintiff must show that (1) "[s]he 'personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant,' and (2) ... such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 562 (S.D.N.Y. 2016) (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)); *see also Kendall v. Emps. Ret. Plan of Avon Prod.*, 561 F.3d 112, 118 (2d Cir. 2009) ("In a class action, once standing is established for a named plaintiff, standing is established for the entire class." (citation omitted)).

First, Defendants rely entirely on out-of-Circuit precedent to assert that Hernandez's price premium theory is not a cognizable Article III injury. Doc. 28 at 16–19. But that ignores explicit precedent in this Circuit holding that "an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing." *Onaka v. Shiseido Ams. Corp.*, No. 21-cv-10665 (PAC), 2023 U.S. Dist. LEXIS 53220, at \*10 (S.D.N.Y. Mar. 27, 2023) (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021)); *see also Shaya Eidelman v. Sun Prods.*

*Corp.*, No. 21-1046-cv, 2022 U.S. App. LEXIS 15480, at *2–3 (2d Cir. June 6, 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'—that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have."); *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 357–58 (S.D.N.Y. 2022) (collecting cases). Accordingly, Hernandez's "price premium" theory of economic injury is cognizable.

But her failure to plead specific facts concerning the third-party testing forming the basis of her allegations that the Product contains PFAS chemicals is fatal to her claim, as, without such details, Hernandez is left with only conclusory allegations insufficient to plausibly allege that the bottle(s) she purchased of the Product contained PFAS. *See Onaka*, 2023 U.S. Dist. LEXIS 53220, at *11 ("[W]hile an Article III injury premised on a price premium theory is available to [the plaintiff, she] still 'must plead enough facts to make it plausible that [she] did indeed suffer the sort of injury that would entitle [her] to relief.' " (quoting *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 65–66 (2d Cir. 2021))). In consumer protection cases like this one, Article III standing will be found whether the complaint "alleges facts demonstrating it is at least plausible that a plaintiff purchased a misbranded product." *Id.* Accordingly, a plaintiff could "allege that her purchased products actually were misbranded, *see Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 239 (S.D.N.Y. 2022); 'that a third-party investigation has revealed defects in the same line of such products' as those she purchased, *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-cv-1040 (JAM), 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023) (citing *John [v. Whole Foods Mkt. Grp., Inc.]*, 858 F.3d [732,] 732 [(2d Cir. 2017)]), or by alleging a 'broad systematic fraud in a market in which [plaintiffs] regularly transact[,]' *Wilson v. MasterCard*, 21-cv-5930, 2022 WL 3159305, at *5 (S.D.N.Y. Aug. 8, 2022)." *Id.* at *11–12. Hernandez does not allege any bottle of the Product she purchased actually tested positive for the presence of any PFAS. *See* Doc. 24 ¶¶ 49–54. While it is true that this "need not be fatal, if the independent testing is 'reasonably near in time' to [Hernandez's] own purchases," as here, a plaintiff must still allege facts sufficient to show that the defects pervaded an entire line or market of products. *See Onaka*, 2023 U.S. Dist. LEXIS 53220, at *11–14.

**\*6**  For instance, in *John*, which Hernandez relies upon, the plaintiff alleged that the defendant grocery store had systematically overstated the weights of pre-packaged food products and overcharged customers as a result. 858 F.3d at 734. Reversing the district court's dismissal of the case for lack of standing, the Second Circuit held that the plaintiff need not plead he *personally* ever overpaid because, drawing all reasonable inferences in his favor, it was plausible he had done so at least once since third-party testing revealed that 89% of all packages were mis-labeled, and he purchased those types of pre-packaged products at least once or twice a month for years. *Id.* at 736–37.

Likewise, in *Clinger*, which Hernandez also relies upon, a third-party study found that approximately one out of six sunscreen products contained benzene (a chemical that causes cancer and which plaintiffs alleged was unsafe at any level), including several manufactured by the defendant, and plaintiffs' independent testing corroborated the presence of benzene in several of defendant's sunscreen products. 2023 WL 2477499, at *1–2. Because it was "reasonable to assume that benzene ... must have appeared by reason of some aspect of the manufacturing process, ... if the plaintiffs bought a particular sunscreen product reasonably near in time to the testing positive of that product for the presence of benzene, then it is at least plausible to conclude that the product purchased by the plaintiff was also contaminated with benzene." *Id.* at *4. Accordingly, the court held that the three of the six plaintiffs who had purchased a type of sunscreen product that had tested positive for benzene had standing, even if the specific bottle of the product they purchased had not been tested. *Id.* But the remaining three plaintiffs, who alleged that they purchased other sunscreen products that were from the same defendant-manufacturer but were product lines not tested for benzene, lacked standing because it would be only "speculative—rather than plausible —to conclude that benzene was present" in those product lines, given that benzene was only present in one out of six sunscreens tested. *Id.* at *7.

And, like the latter three *Clinger* plaintiffs, the plaintiffs in *Onaka*, to which Hernandez also directs the Court, lacked standing where plaintiffs brought a putative class action that a defendant-manufacturer's cosmetic products contained PFAS (contrary to its marketing as "natural"), but the plaintiffs failed to allege that they either purchased adulterated products or that PFAS was so widespread that it was plausible that either specific product lines or all of defendant's products contained PFAS. 2023 U.S. Dist. LEXIS 53220, at *14–16.

Although, here, Hernandez does allege that both the testing of the Product and her purchase occurred in July 2022—which makes it a slightly closer call that *Onaka*, in which the complaint failed to even allege the testing was "reasonably near in time" to the plaintiffs' purchases, 2023 U.S. Dist. LEXIS 53220, at *13—she otherwise offers no information about the independent third-party testing on the Product. *See* Doc. 25 ¶¶ 49–54. Unlike the allegations in *John* that 89% of all products were defective, or those in *Clinger* that made it reasonable to assume that a manufacturing defect rendered an entire line of products defective, Hernandez makes no allegations sufficient to plausibly show that all or substantially all of the Product contains PFAS. Indeed, Hernandez does not even offer allegations that would allow the Court to plausibly conclude that 1/6th of the Product contains PFAS, which the *Clinger* court found made it only "speculative—rather than plausible—to conclude" that the Product was defective. *See* 2023 WL 2477499, at *7. Rather, she neither states how many bottles of the Product she purchased or from where, nor how many were tested and in what manner. And, where it is "only 'likely' [a plaintiff] might have purchased mislabeled products," and the plaintiff thus "seems impermissibly to ask the Court to infer an injury for [her]," no standing exists. *Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20-cv-10900 (ER), 2022 U.S. Dist. LEXIS 59069, at *17–18 (S.D.N.Y. Mar. 30, 2022). The Court is therefore unable to conclude that Hernandez has Article III standing, and Defendants' motion to dismiss for lack of subject-matter jurisdiction is granted.

*2. The Court Need Not Decide Defendants' Remaining Arguments*

***7** Because the Court must grant the motion pursuant to Rule 12(b)(1), it will not decide Defendants' arguments with respect to Rule 12(b)(6).

*3. Leave to Amend*

The Court will, however, grant Hernandez leave to amend, as she requested (Doc. 30 at 29). Courts are instructed to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted); *see also Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-cv10104 (ER), 2023 U.S. Dist. LEXIS 54340, at *10 (S.D.N.Y. Mar. 29, 2023) ("The party opposing the motion to amend bears the burden of proving the claim's futility."). This is a permissive standard since the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits" of the case. *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Moreover, the Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).

Because this is the Court's first opportunity to highlight the precise defects of Hernandez's pleading, and it is not yet apparent that another opportunity to amend would be futile, the Court will permit her to replead the dismissed claims.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' motion is GRANTED. Should Hernandez wish to amend the complaint, she must do so by January 23, 2024. If she fails to do so, the case will be closed.

It is SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 9022844

---

**Footnotes**

| | |
|---|---|
| 1 | Hernandez does not specify how many bottles of the Product were tested, nor does she provide any further details about the nature or results of the independent testing or who performed it. |

2       ATSDR is a federal public health agency of the U.S. Department of Health and Human Services.

---

**End of Document**                                            © 2024 Thomson Reuters. No claim to original U.S. Government Works.