UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
CAROLYN WINANS, individually and
on behalf of all others similarly situated,

                   Plaintiff,

     -against-

ORNUA FOODS NORTH AMERICA
INC.,

                  Defendant.
-----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 2:23-cv-01198-FB-RML

*Appearances:*
*For the Plaintiffs:*
JASON P. SULTZER
PHILIP J. FURIA
The Sullivan Law Group P.C.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601

*For the Defendant:*
COURTNEY J. PETERSON
NORA J. FARRIS
Bryan Cave Leighton Paisner LLP
1290 Avenue of the Americas
New York, NY 10104

**BLOCK, Senior District Judge:**

In this putative class action brought by Plaintiff Carolyn Winans ("Winans")

relating to the alleged presence of per- and polyfluoralkyl substances ("PFAS") in

Kerrygold Salted and Unsalted Butter Sticks ("Kerrygold Butter Products"),

Defendant Ornua Foods North America Inc. ("Ornua") moves to dismiss under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the following reasons,

Ornua's motion is granted in part and denied in part.

## I.      BACKGROUND

### 1.  Standards

Under Rules 12(b)(1) and 12(b)(6), the facts are drawn from the Amended

Complaint.  On a 12(b)(6) motion to dismiss, the Court assumes the Amended

Complaint's factual allegations, but not legal conclusions, to be true.  *See Pension*

*Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan*

*Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013).  The Court must also

draw all reasonable inferences in favor of the plaintiff.  *See Calcano v. Swarovski*

*N. Am. Ltd.*, 36 F.4th 68, 72 n.1 (2d Cir. 2022).  To survive a Rule 12(b)(6) motion

to dismiss, the complaint must include enough facts to state a claim to relief that is

facially plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007),

i.e., the plaintiff must plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss under Rule 12(b)(1), while the Court accepts all

factual allegations in support of a plaintiff's standing as true, the plaintiff bears the

burden of establishing standing and must allege enough facts to make it plausible

to conclude that the plaintiff has standing.  *See Harry v. Total Gas & Power N.*

*Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018).

2

## 2.  Facts

This case concerns alleged misrepresentations in the packaging of Kerrygold Butter Products, which are marketed and sold by Ornua.  The label of the Kerrygold Butter Products states that the butter is "PURE IRISH BUTTER," as shown below by the picture Winans included in her Complaint.  However, in early 2023, in response to a New York state law banning PFAS in food packaging, Ornua issued a recall of the Kerrygold Butter Products because the packaging contained PFAS.  Exposure to PFAS — a category of synthetic, artificial chemicals often called "forever chemicals" — is linked to fertility issues, developmental delays, increased risk of cancer, increased cholesterol and obesity, and reduced immune response and can be dangerous even at low levels.



Winans, who purchased and consumed the Products subject to recall,

3

proceeds on the theory that PFAS migrates into food, including butter, when the chemicals are present in the packaging.  To that end, Winans's complaint cites five studies on migration.  Accordingly, despite Defendant's packaging that Kerrygold Butter is "PURE IRISH BUTTER," Winans contains that the products actually contained PFAS.

On behalf of herself and other consumers who purchased the Kerrygold Butter Products, Winans brought claims for: (1) deceptive business acts or practices in violation of New York General Business Law ("GBL") § 349, *et seq.*; (2) false advertising in violation of GBL § 350 *et seq.*; (3) selling of adulterated or misbranded food in violation of the New York State Agriculture & Markets Law ("AML") § 199-a; (4) negligence per se; and (5) unjust enrichment.[1]  She seeks money damages as well as injunctive relief.

## II.    DISCUSSION

### 1. Standing

Ornua first argues that all of Winans's claims should be dismissed under Rule 12(b)(1) because she has not adequately alleged an injury in fact sufficient to support Article III standing, or alternatively, under Rule 12(b)(6) because she fails

---

[1] In her opposition, Winans states that she "hereby agrees to withdraw [her] claims for negligent misrepresentation and express warranty, without prejudice."

to plausibly allege that any of the Kerrygold Butter Products contained PFAS.

To satisfy the "'irreducible constitutional minimum' of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  This threshold, the Second Circuit has emphasized, is "low." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *WC Cap. Mgmt., LLC v. UBS Sec., LLC*, 711 F.3d 322, 329 (2d Cir. 2013)).

Winans's theory of harm is a variation of the "price-premium theory": she was injured because she paid a premium for products that were misbranded and/or inadequately labeled because, contrary to the "PURE IRISH BUTTER" labeling, the Kerrygold Butter Products contained PFAS.  In this context, the standing inquiry is whether the "Complaint alleges facts demonstrating it is at least plausible that a plaintiff purchased a misbranded product," i.e., containing PFAS *Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665-PAC, 2023 WL 2663877, at *4 (S.D.N.Y. Mar. 28, 2023) (citing *John*, 858 F.3d at 736).

Taking Winans's allegations as true and drawing all reasonable inferences in her favor, as this Court must, *see John*, 858 F.3d at 737, the Court concludes that

5

Winans has plausibly alleged that she purchased a Kerrygold Butter product that contained PFAS.  The parties do not appear to dispute that Winans purchased Kerrygold Butter products with *packaging* that contained PFAS.  The question is thus whether Winans has alleged that the *butter* itself contained PFAS.  To make that link, Winans posits the migration theory, whereby the PFAS migrated from the packaging to the butter, which she supports by citing several studies establishing other instances of PFAS migrating from packaging to food products.

This theory strikes the Court as plausible — indeed, for the Court to conclude it *implausible* that PFAS could migrate from packaging to butter, it would need to draw reasonable inferences *against* Winans and impose too-heighted of a pleading standing on the plaintiff.  At this stage, however, Winans has met her burden by plausibly alleging that the Kerrygold Butter products contained PFAS.

Ornua seems to propose a rule that would require plaintiffs to provide laboratory testing results of the product to satisfy standing.  But as other courts have recognized on a motion to dismiss, that Winans did not affix laboratory testing results to the Complaint is of no moment.  *See Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040 (JAM), 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023) ("[T]he fact that the plaintiffs did not actually test the products that

6

they purchased does not mean that they lack standing.").  Certainly, a testing requirement might be sensible in cases where there is no reason to otherwise believe that a product contained PFAS.  But here, where Ornua publicly removed its products because the packaging contained PFAS, Winans's allegations suffice.

For that reason, this case is distinguishable from several recent, non-binding cases where consumer products allegedly contained PFAS.  In these cases, district courts in the Second Circuit dismissed claims for lack of standing where plaintiffs' "sparse factual allegations" regarding testing did now allow the Court to conclude the PFAS presence was anything more than a "sheer possibility."  *Esquibel v. Colgate-Palmolive Co.*, No. 23-CV-00742-LTS, 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023) (PFAS allegedly in personal care products); *see also Hernandez v. Wonderful Co. LLC*, No. 23-CV-1242 (ER), 2023 WL 9022844, at *6 (S.D.N.Y. Dec. 29, 2023) (Pomegranate juice drink); *Onaka*, 2023 WL 2663877, at *4-5 (beauty products).

Here, however, neither party appears to contest the PFAS was, in fact, present in the packaging, and the Court can reasonably infer, based on the migration theory and Winans's allegations, that PFAS plausibly reached the butter. Indeed, courts in the other cases recognized that plaintiffs could establish plausible injury by pleading facts that "raised a plausible inference that the Product was

7

systemically contaminated such that any bottle of the Product, including the ones Plaintiffs purchased, likely contained PFAS." *Esquibel*, 2023 WL 7412169, at *3; *see also Onaka*, 2023 WL 2663877, at *4-5 (allegations that "the presence of PFAS in the products is so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once" suffice).

Accordingly, given the widespread presence of PFAS in packaging and Winans's plausible migration theory, the Court finds that Winans has met the Article III standing threshold. For the same reason, Winans has also met her burden under Rule 12(b)(6).

### 2. GBL §§ 349 and 350 Claims

#### A. Whether Winans Has Plead an Actionable Misrepresentation

Ornua argues that the Court should dismiss Winans's GBL §§ 349 and 350 claims because she failed to plead an actionable misrepresentation. To state a § 349 claim, a plaintiff must allege (1) that defendant was engaged in a "consumer-oriented" business practice or act; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). A § 350 claim requires the plaintiff to allege that "the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *DeAngelis*

8

*v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414 (3d Dep't 2008).  "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349."  *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002).  Ornua's arguments fail.

Ornua argues that the phrase "pure Irish butter" on the Kerrygold packaging is not misleading because the word "pure" modifies "Irish," not "butter," i.e., "pure" is a claim about Kerrygold's single-source, Irish origin rather than about the quality of the butter.  Stated differently, Ornua urges the Court to read the phase "pure Irish butter" as meaning "butter purely from Ireland," rather than "pure butter from Ireland."  The implication is that, even if the Products contained PFAS, they would not mislead consumers because the packaging does not purport that the products are pure, i.e., without PFAS.

"New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022).  Winans must allege that a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018).  The

9

Court may determine, as a matter of law, that an allegedly deceptive advertisement would not mislead a reasonable consumer, *see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), although the reasonable-customer inquiry is "generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

Assuming the butter contains PFAS, the Court concludes that a reasonable consumer could be misled by the "Pure Irish butter" label. It is plausible that a reasonable consumer reading the label would conclude that the adjective "pure" modifies the noun, "butter." As the Second Circuit has emphasized, the word "pure" "indicate[s] the absolute absence of contaminants." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020). In fact, "pure" is a common product label, and other courts have concluded that a reasonable consumer viewing the product would interpret the terms to mean that the product is free of other substances. *See Scholder v. Sioux Honey Ass'n Coop.*, No. CV 16-5369 (GRB), 2022 WL 125742, at *4 (E.D.N.Y. Jan. 13, 2022) ("pure honey"). By contrast, Ornua's proposed reading strikes the Court as the more unnatural of the two.[2]

---

[2] The words' ordering — "*pure Irish* butter," rather than "*Irish pure* butter" — is of no significance because, pursuant to the standard ordering of adjectives in English, "pure" precedes "Irish." *See* https://dictionary.cambridge.org/us/grammar/british-grammar/adjectives-order.

Ornua argues that Winans has failed to plead materiality, meaning that Winans has failed to show that the presence of PFAS is material to a reasonable consumer. Ornua's argument is misplaced for two reasons. First, materiality is not a separate element; rather, to state a GBL claim, the plaintiff must plead the existence of a material misrepresentation that is likely to mislead a reasonable consumer, as Winans has. *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 108 (S.D.N.Y. 2021) (materiality is not a "quasi-distinct element" but is incorporated into the second element of a deceptive labeling claim). Second, even if materiality were a separate, required element, the Court cannot conclude, as a matter of law, that the presence of PFAS in butter is immaterial to a reasonable consumer. To the contrary, the Court presumes that the presence of PFAS would be concerning to many consumers.

### B. Omission-Based Claims

Omissions are actionable under the GBL "where the business alone possesses material information that is relevant to the consumer and fails to provide this information," and the plaintiff must "plausibly allege that the defendants had knowledge of the material information and failed to disclose or actively concealed such information." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (cleaned up).

11

First, while Ornua argues that Winans has not plausibly alleged that Ornua knew of the PFAS presence, the Court concludes that Winans has.  Specifically, Winans alleges that (1) Ornua exclusively controlled the contents of the Kerrygold packaging that contained PFAS; and (2) Ornua recalled its Kerrygold Products in response to a New York law banning PFAS from packaging, which suggests that Ornua was at the very least aware that its packaging did contain the chemical.  It seems at least plausible that Ornua may have suspected that the PFAS could migrate from the packaging to the product.  While discovery may reveal otherwise, the Court, drawing inferences in Winans's favor, cannot dismiss the omissions-based claims at this juncture.

Second, Ornua argues that federal law preempts Winans's omission-based claims.  FDA regulations exempt from disclosure requirements "[i]ncidental additives that are present in a food at insignificant levels."  21 C.F.R. § 101.100(a)(3).  These "incidental additives" include "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food."  21 C.F.R. § 101.100(a)(3)(iii).  According to Ornua, the presence of PFAS in Kerrygold Butter is exempt from disclosure, and, because 21 U.S.C. § 343-1(a) prohibits states from establishing food-labeling requirements that are not identical to federal law, state-law claims that attempt to impose such a requirement are preempted.

12

But as Winans rightly counters, federal regulations exempt the disclosure of incidental food additives only if they are present at *insignificant levels*. This question is factual and not suited to resolution on a 12(b)(6) motion to dismiss, as the few other courts to have addressed the issue generally recognize. *See, e.g., Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *7 (N.D. Ill. Jan. 12, 2023) ("The court cannot determine on the pleadings alone that this exemption applies because whether phthalates are present only at an 'insignificant level' is a question of fact, yet to be resolved.") (citing *Holt v. Foodstate, Inc.*, No. 15-cv-78, 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015)). At this stage, the Court cannot dismiss Winans's omission-based claims.

### 3.  AML § 199-a Claim

Ornua argues that AML § 199-a — which prohibits the sale of food that is "adulterated or misbranded" — does not provide a private right of action. However, other courts have concluded or assumed that the AML does provide a private right of action. *See, e.g.*, *Warner v. StarKist Co.*, No. 118CV406GLSATB, 2019 WL 1332573, at *2 (N.D.N.Y. Mar. 25, 2019); *Porrazzo v. Bumble Bee Foods*, LLC, 822 F. Supp. 2d 406, 424 (S.D.N.Y. 2011) (denying motion to dismiss on two AML claims). As one court explained, "a decision from the New York Court of Appeals [] seems to indicate that the AML was designed to provide

13

a stand-alone private remedy to consumers" of mislabeled food products.  *Warner*, 2019 WL 1332573, at *2 (citing *Abounader v. Strohmeyer & Arpe Co.*, 243 N.Y. 458, 463 (1926)).  Accordingly, the Court declines to dismiss the AML claim.

### 4.  Negligence Per Se Claim

Ornua urges the Court to dismiss Winans's negligence per se claim on the grounds that neither the FDCA nor AML § 199-a provides a private right of action. The Court has already rejected Ornua's AML argument above.  As to the FDCA, while other states deny negligence per se claims based on FDCA violations, New York recognizes one, *see In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 726-29 (D.N.J. 2021) (surveying jurisdictions), as the Second Circuit has expressly recognized that "a private cause of action for per se negligence arises under New York State law upon violation of the FDCA." *Sita v. Danek Med., Inc.*, 43 F. Supp. 2d 245, 262 (E.D.N.Y. 1999) (citing *Ezagui v. Dow Chemical Corp.*, 598 F.2d 727, 733 (2d Cir. 1979)); *see also Henson v. Wright Med. Tech., Inc.*, No. 5:12-CV-805 FJS/TWD, 2013 WL 1296388, at *6 (N.D.N.Y. Mar. 28, 2013) ("Plaintiff is entitled to recovery under a theory of per se negligence" based on FDCA violation).

### 5.  Unjust Enrichment

Ornua argues that the unjust enrichment claim fails because it is duplicative

14

of the GBP claims.  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).

While the New York Court of Appeals has held that a claim for unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim," *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (citations omitted), the Second Circuit has noted that "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim."  *See Axon v. Florida's Nat. Growers*, Inc., 813 F. App'x 701, 706 (2d Cir. 2020). Absent further guidance from the Second Circuit, there appears to be inconsistency as to how district courts in this Circuit treat unjust enrichment claims.  *Compare Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (dismissing enrichment claim as duplicative of GBL claims) *with McTyere v. Apple, Inc.*, 663 F. Supp. 3d 247, 259 (W.D.N.Y. 2023) (declining to dismiss the unjust enrichment claim as duplicative of GBL claims).

Because it is conceivable that Winans might lose on her GBL claims but prevail on her unjust enrichment claim, *see McCracken v. Verisma Sys., Inc.*, No.

6:14-CV-06248(MAT), 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017) ("[i]n contrast to a claim for unjust enrichment, a claim for violating NYGBL § 349 requires "[p]roof that [a] defendant's acts are directed to consumers""), the Court declines to dismiss the unjust enrichment claim.

### 6. Injunctive Relief

Winans seeks several forms of equitable relief, including a blood serum testing program, a medical monitoring program, and a public injunction.

Ornua argues that Winans failed to plead the required elements for the medical-monitoring remedy.  However, because a motion to dismiss "is addressed to a 'claim,' not to a form of damages," *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019), this motion is "procedurally premature," regardless of the merits of Ornua's argument.  *Ostenfeld v. Laundress, LLC*, No. 22-CV-10667 (JMF), 2024 WL 967124, at *10 (S.D.N.Y. Mar. 5, 2024).  Ornua can renew its argument at a later stage.

As to the public injunction, Winans lacks standing.  Because "past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  While Winans alleges that "Defendant

continue[s] to sell their Products containing PFAS chemicals" and that she "continue[s] to desire to purchase the Product from Defendant if she can rely on [them] to be safe and free from any artificial ingredients," she admits that she "would not have purchased the Products, or would not have purchased it on the same terms, if the true facts had been known."  Am. Compl. ¶¶ 72, 74, 79.

Where plaintiffs fail to allege that they will continue to purchase the product in the future, they fail to establish a likelihood of future injury.  *See Chang v. Fage USA Dairy Indus., Inc.*, No. 14-CV-3826 (MKB), 2016 WL 5415678, at *5 (E.D.N.Y. Sept. 28, 2016) (considering similar allegations); *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *7 (E.D.N.Y. Sept. 26, 2016) (accord).  Moreover, "in order to be injured by an allegedly deceptive misrepresentation, Plaintiffs must actually be personally deceived by the misrepresentation," a condition that no longer holds.  *Chang*, 2016 WL 5415678, at *5.  Accordingly, Winans lacks standing to seek injunctive relief individually and on behalf of a class.

### III.   CONCLUSION

For the foregoing reasons, Ornua's motion is denied in part and granted in part.  Winans's GBL §§ 349 and 350, AML § 199-a, unjust enrichment, and negligence per se claims survive, while her claim for a public injunction is dismissed.

**SO ORDERED.**

                     _/S/ Frederic Block_____
                     FREDERIC BLOCK
                     Senior United States District Judge

Brooklyn, New York
April 23, 2024

18